IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ANDREW W. J., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| | ) Case No. 22-CV-113-MTS |
| | ) |
| KILOLO KIJAKAZI, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

Plaintiff Andrew W. J. requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his application for disability benefits under the Social Security Act. Plaintiff appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined he was not disabled. For the reasons discussed below, the Court **affirms** the Commissioner's decision denying benefits.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy …." 42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920. Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied.

At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work.

If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally, Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Id*. at 750.

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). A court's review is limited to two inquiries: first, whether the correct legal standards were applied; and second, whether the decision was supported by substantial evidence. *Noreja v. Soc. Sec. Comm'r*, 952 F.3d 1172, 1177 (10th Cir. 2020) (citation omitted). Substantial evidence is

"more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). "It means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019), quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). A court, however, may not re-weigh the evidence nor substitute its judgment for that of the Commissioner. *Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). Even if a court might have reached a different conclusion, the Commissioner's decision will stand if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

### Background and Procedural History

On June 17, 2015, Plaintiff filed an application for supplemental security income benefits pursuant toTitle XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. (R. 572). He alleged an inability to work beginning on January 20, 1989,[1] due to limitations resulting from stenosis of pulmonary artery, Tetralogy of Fallot, and atrial flutter. (R. 602). Plaintiff was thirty-two years old at the time of the ALJ's most recent decision. (R. 27, 598). He has a high school education and no past relevant work. (R. 603, 649-50).

Plaintiff's application was denied both initially and upon reconsideration. (R. 271-74, 280-82). At Plaintiff's request, ALJ James Stewart conducted two administrative hearings, one on July 26, 2017, and a supplemental hearing on November 3, 2017. (R. 283-85, 181-228). He issued a decision on January 2, 2018, denying benefits and finding Plaintiff not disabled. (R. 250-60). On

---

[1] At the administrative hearing held on March 11, 2020, and again on July 29, 2021, the ALJ indicated that he would consider the alleged onset date as August 14, 2014. (R. 13-14, 44-45, 119).

December 18, 2018, however, the Appeals Council remanded the case to the ALJ for the resolution of additional issues. (R. 267-70). ALJ Stewart conducted three additional hearings on June 12, 2019, November 6, 2019, and March 11, 2020 (R. 107-55, 156-68, 169-80), and then held the most recent hearing on July 29, 2021. (R. 37-106). On August 10, 2021, he issued another decision denying benefits and finding Plaintiff not disabled. (R. 13-27). Plaintiff sought review by the Appeals Council, which it denied on January 19, 2022. (R. 1-4). As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. § 416.1481.

### Decision of the Administrative Law Judge

Following the five-step sequential process, the ALJ determined at step one that Plaintiff had not engaged in substantial gainful activity since June 17, 2015, the application date. (R. 16). At step two, he found Plaintiff suffered from severe impairments of complex congenital heart disease, stenosis of pulmonary artery, pulmonary hypertension, Tetralogy of Fallot, atrial flutter/atrial fibrillation, cardiac dysrhythmias, sinus pauses, valvular heart disease or other stenotic defects (primarily pulmonary valve stenosis), essential hypertension, and supraventricular tachycardia ("SVT). *Id*. The ALJ determined at step three that Plaintiff's impairments did not meet or equal a listed impairment. (R. 16-17). Based upon his consideration of Plaintiff's subjective allegations, the medical evidence, and the medical source opinion evidence, the ALJ concluded that Plaintiff retained "the [RFC] to perform sedentary work as defined in 20 CFR 416.967(a)" with the following additional limitations:

> [T]his person is limited to doing straight sit-down jobs that are categorized as sedentary but as actually performed require very little standing and walking. Standing and walking would be limited to no more than ½-hour per day collectively as an incidental, not regular, part of the job. Also, no operation of foot controls. The vocational expert requested to use professional experience to determine jobs listed in DOT or other publications as sedentary but are actually performed as sit-down

> jobs with very little or no walking or standing required. No exposure to unprotected heights, open flames, dangerous machinery or equipment, or other hazardous conditions (note that all moving machinery is not dangerous, such as machinery where moving parts are shielded). No exposure to elevated levels of heat or cold (elevated level means concentrations in excess of that normally found in modern office buildings or light manufacturing facilities).

(R. 17).

At step four, the ALJ determined Plaintiff had no past relevant work. (R. 26). After consultation with a vocational expert ("VE"), the ALJ concluded at step five that Plaintiff could perform the representative jobs of optimal goods assembler and table worker, both of which he found existed in significant numbers in the national economy. (R. 26-27, 92-94). As a result, the ALJ found Plaintiff had not been under a disability since June 17, 2015, the date the application was filed. (R. 27).

## Errors Alleged for Review

Plaintiff's sole allegation of error on appeal is that the ALJ's actions during the July 29, 2021, administrative hearing denied him a full and fair hearing and thereby violated his due process rights. Plaintiff argues the ALJ prematurely ended the cross-examination of medical expert Jack LeBeau, M.D. As a result, Plaintiff claims that he was prohibited from questioning Dr. LeBeau about potential conflicts with his prior testimony during the March 11, 2020, hearing and about inconsistencies between his testimony and the evidence of record. *See* Docket No. 14, p. 2. The Commissioner counters that Plaintiff has "fail[ed] to demonstrate that the ALJ prevented him from inquiring into pertinent matters or that the ALJ's action, even if the Court finds error, resulted in harm." Docket No. 15, p. 1.

## Cross-Examination of Medical Expert – Due Process

Dr. LeBeau first testified as a medical expert in the case at the March 11, 2020, hearing. He testified that with his impairments, Plaintiff was capable of performing sedentary work prior

5

to October of 2017, when Plaintiff underwent a heart valve procedure, and he remained able to perform such work after the procedure. (R. 131, 140-41). He additionally opined that with training or physical therapy it was possible Plaintiff could perform some light work after October of 2017. (R. 143, 153). Dr. LeBeau testified, however, that the review of a more recent echocardiogram would be helpful in determining the significance of the pulmonary artery pressures in the record. (R. 147-48). At the end of the March hearing, the ALJ considered Dr. LeBeau's testimony completed and indicated that another hearing would be scheduled to obtain further testimony from Plaintiff and testimony from the VE. (R. 154-55).

The hearing was continued until July 19, 2021, at which time it was held by teleconference under COVID-19 procedures. (R. 40-41). Because of a consultative examination obtained after the prior hearing, which included a more recent echocardiogram and records from Plaintiff's cardiac monitor, Dr. LeBeau again testified at the hearing. (R. 45-46). When questioned by the ALJ, Dr. LeBeau explained Plaintiff's cardiac monitor showed that Plaintiff sometimes experienced sinus pauses, including one of at least seven seconds, but the evidence did not show that Plaintiff suffered associated symptoms other than occasional palpitations. (R. 56). He testified Plaintiff might need a pacemaker in the future, but the pauses did not cause any symptoms of significance for the workplace. (R. 60-62). Dr. LeBeau further testified that Plaintiff's abnormal right ventricular systolic pressure, evident on his most recent echocardiogram, was concerning for the future, but his pulmonary valve was currently working. (R. 58-59, 61-62). Even considering the newly reviewed medical evidence, Dr. LeBeau determined Plaintiff could perform light work, and he agreed with the ALJ that Plaintiff could also perform sedentary work. (R. 69-70).

During cross-examination, Dr. LeBeau was questioned about Plaintiff's ablative procedures and their effectiveness (R. 80-81). Dr. LeBeau was also questioned about Plaintiff's

echocardiogram. (R. 82-83). Problems arose, however, when the questioning turned to Plaintiff's subjective symptoms:

> BY ATTORNEY:
>
> Q  But Doctor, these are - -
>
> ME:  - - things are possible.
>
> Q  - - in the - - these are part of - - these are part of the record - - this is part of the record, correct? The - - the patient is reporting to the doctor, at the time of the echocardiogram, of these symptoms, correct?
>
> A  He - -
>
> ALJ:  He's - - okay, Counsel, we're not gonna base this on the - - on the Claimant's reporting on the review of symptoms. Okay. You - - you know - -
>
> ME:  Okay.
>
> ALJ:  But you're - - you're - - you're - - you're - - you're seeming to go - - to go over something - - you know, the - - this is not based on the Claimant's symptoms. This - - the - - the doctor has testified that he hasn't - - he has - - you know, he's able to do sedentary work, he's not - - I - - I asked him whether it would - - the - - the - - these conditions would interfere to such an extent that he wouldn't be able to do work on a full-time basis, if it would cause extra absences, he's testified to that. You're going over stuff that's been asked and answered.
>
> ATTY:  Your - - Your Honor, I'm sorry, but they haven't been asked and answered. The doctor testified nothing about these symptoms that are clearly in the record. He says - -
>
> ALJ:  They're in the - -
>
> ATTY:  - - the guy doesn't have any symptoms, but it's clearly in the record that he does have these symptoms, and I'd like to ask if these are symptoms that could be expected with this condition.
>
> ALJ:  You've asked - -
>
> ATTY:  And I - -
>
> ALJ:  - - that question.
>
> ATTY:  And I haven't got an opportunity - -

7

ALJ:  It's been answered.

ATTY:  - - to finish that.

ALJ:  Okay, you're going over the review of symptoms. So basically, you're going over the claims, and you're indicating that - - that you want an answer as to whether or not they could be caused by the condition. That's what you wanna know?

ATTY:  I wanna - - yeah, I wanna know. I haven't - - I - - he - - he never denied, for instance, excessive daytime sleepiness, dizziness, lightheadedness, and vertigo. Those are important symptoms to this condition, and I've not heard him - - the doctor indicate that that wouldn't be something that would be expected with this condition.

ALJ:  Well, just say - -

ATTY:  I mean, why should we not believe [INAUDIBLE] - -

ALJ:  - - neurologically - - neurologically, he is alert and oriented to person, no neuros was found in this exam, and the - - Dr. LeBeau has - - has already testified that, based on the Claimant's medical condition, currently and over time, that he would not be sufficiently impacted to cause him to miss work by - - for - - for - - for any reason related to what he's testified about. So you're - - you're trying to take a - - a review of symptoms that the Claimant has - - has stated he has, and those are his allegations, but the doctor has gone over the full record, and based on what he's testified to, his - - the Claimant's symptoms, he - - he hasn't had symptoms. He's had a - - he talked - - testified that he had a condition that could cause symptoms, but it hadn't so far. And that it may in the future, but it hadn't so far. That's his testimony. And - - and - -

ATTY:  And that's why I have an opportunity to ask him questions also. Perhaps he missed something in the record, and I'm going over that with him. And I'd like the - - I'd like the opportunity to be able to address those things, because I don't think his testimony is - - is accurate as it relates to the record, Your Honor.

ALJ:  Well, you know - - how long do you think you're gonna take?

ATTY:  As - - as long as I need to to get through the questions. I mean, I'm having a hard time getting answers. But I can - -

ALJ:  Well, 'cause he's already - - 'cause he's already answered the question. He's already answered it. You're going off of - - off - - off of the - - off the Claimant's allegations and - - and professed symptoms and asking the doctor if that could be caused and - - and trying to make something out of that, when he's already testified that those symptoms, he's taken into account, and they haven't caused the - - that

8

they - - that they don't - - don't limit him from doing sedentary work, and they don't meet a listing.

ME: Could I offer one bit of information?

ALJ: Okay.

ME: Well, Judge, as you know, he was equipped with a[n] implanted cardiac monitor, which involved a - - I guess, a catheter in his heart and so forth. And on this monitor, there were occasional extra beats and the like. But as you're saying, these things basically happen without causing any significant symptoms. Now he might have had palpitations once in a while, but he certainly didn't get dizzy. He certainly didn't get heady, you now, or anything like that. And that's an answer to at least part of your question, and I hope that is some help.

ALJ: Counsel, I'm gonna - - I'm gonna call an end to your cross-examination. I think you've had ample opportunity to cross-examine, and I wanna go to the vocational expert and excuse the doctor. . . . But I want - - right now, I wanna take the vocational expert's testimony. Doctor, you - - you - - you are excused.

ATTY: Your Honor, for the record - -

ME: All right, good luck to everybody.

ATTY: - - I object to the - -

ME: Thank you - -

ATTY: - - excusing of the - -

ME: - - bye-bye.

ATTY: - - doctor and - - and - - and to your termination of my cross-examination.

ALJ: Very good. Your objection is noted and overruled.

(R. 87-91).

Plaintiff alleges the ALJ's termination of Dr. LeBeau's cross-examination violated his due process rights by precluding his counsel from identifying conflicts with Dr. LeBeau's prior hearing testimony and with the record evidence. While social security hearings are subject to procedural due process considerations, *Allison v. Heckler*, 711 F.2d 145, 147 (10th Cir. 1983), citing

9

*Richardson v. Perales*, 402 U.S. 389, 401-02 (1971), it is generally within the ALJ's discretion how to conduct the hearing. *See Richardson*, 402 U.S. at 400 ("[T]he conduct of the hearing rests generally in the examiner's discretion."); *see also* 20 C.F.R. § 416.1444 ("A hearing is open to the parties and to other persons the [ALJ] considers necessary and proper. At the hearing, the [ALJ] looks fully into the issues, questions you and other witnesses, and . . . [a]ccepts as evidence any documents that are material to the issues[.] . . . The [ALJ] may decide when the evidence will be presented and when the issues will be discussed."). This discretion includes the cross-examination of witnesses. *See Galdean v. Barnhart*, 46 Fed. Appx. 920, 923 (10th Cir. 2002) ("[W]e note that 'the role of cross-examination in disability proceedings should remain limited."), quoting *Haddock v. Apfel*, 196 F.3d 1084, 1090 (10th Cir. 1999).[2] Moreover, "[a] due process claim will not succeed . . . if the claimant fails to show prejudice." *Mays v. Colvin*, 739 F.3d 569, 573 (10th Cir. 2014), citing *Energy W. Mining Co. v. Oliver*, 555 F.3d 1211, 1219 (10th Cir. 2009). Prejudice generally encompasses the demonstration "that the adjudication was infected by some prejudicial, fundamentally unfair element," the absence of which would have likely resulted in a different outcome. *Id*. at 573-74.

Plaintiff cannot establish the ALJ's conduct at the hearing violated his due process rights. Although the hearing transcript demonstrates the ALJ interrupted Plaintiff's counsel on numerous occasions and even testified for Dr. LeBeau before terminating cross-examination – conduct which the Court does not condone – it cannot be said the ALJ's actions constituted legal error and violated

---

[2] The Hearings, Appeals and Litigation Law (LEX) manual ("HALLEX") "defines procedures for carrying out policy and provides guidance for processing and adjudicating claims at the Hearing, Appeals Council and Civil Actions levels." HALLEX I-1-0-1, 2005 WL 1863821. In the guidance pertaining to medical experts, HALLEX states that "[t]he claimant and the representative have the right to question the ME fully on any pertinent matter within the ME's area of expertise. However, the ALJ will determine when they may exercise this right and whether questions asked or answers given are appropriate." HALLEX I-2-6-70(C), 1993 WL 751901.

Plaintiff's due process rights given the broad level of discretion afforded an ALJ during the examination of witnesses. The ALJ determined counsel's line of questioning was not pertinent to the issues based upon Dr. LeBeau's prior testimony, and counsel continued to pursue the line of questioning even after the ALJ directed her to stop.

Even if Plaintiff could establish the ALJ's termination of Dr. LeBeau's cross-examination constituted legal error, he has failed to demonstrate any prejudice. Plaintiff argues the ALJ's premature termination of cross-examination forestalled counsel of the opportunity to question Dr. LeBeau regarding: (1) a conflict in his testimony about the level of work Plaintiff could perform, and (2) inconsistencies in Dr. LeBeau's testimony related to Plaintiff's reported symptoms associated with the sinus pauses and the pulmonic valve pressure, including their impact on Plaintiff's ability to work. *See* Docket No. 14, pp. 12-14. As detailed above, there was no conflict in Dr. LeBeau's testimony about the level of work Plaintiff could perform. Moreover, Dr. LeBeau was aware of Plaintiff's reported symptoms as well as the evidence of sinus pauses and elevated pressure in Plaintiff's right pulmonary valve and explained in his testimony why he believed Plaintiff was still capable of performing work. Plaintiff has failed to establish that the ALJ's termination of cross-examination was fundamentally unfair or that the ALJ's allowance of additional time for questions would have likely changed the outcome of the decision.

Critically, Plaintiff in no way challenges the sufficiency of the evidence relied upon by the ALJ when assessing Plaintiff's RFC and ultimately determining Plaintiff is not disabled. He does not challenge the ALJ's findings as to the medical opinions in the record, his consideration of subjective symptoms, the RFC assessment, or any other aspect of the ALJ's decision. (R. 13-27). The Court therefore concludes that Plaintiff has not demonstrated a violation of due process, as the ALJ's termination of cross-examination did not constitute legal error, result in prejudice, or

make the evidence so unreliable that it could not provide substantial evidence in support of the ALJ's decision.

## Conclusion

For the foregoing reasons, the ALJ's decision finding Plaintiff not disabled is **AFFIRMED**.

IT IS SO ORDERED this 12th day of May, 2023.

_____
MARK T. STEELE, MAGISTRATE JUDGE
UNITED STATES DISTRCT COURT